

**FILED**

July 21, 2023 02:16 PM
ST-2021-CR-00279
**TAMARA CHARLES
CLERK OF THE COURT**

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN
****************

| | |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, | ) CASE NO. ST-2021-CR-00279 |
| | ) |
| Plaintiff, | ) 14 V.I.C. § 922(a)(1); 16 VIC § 91(b)(1)(2) |
| vs. | ) 14 V.I.C. § 922(b); 16 VIC § 91(b)(1)(2) |
| | ) 14 V.I.C. § 295(1)(4); 16 VIC § 91(b)(1)(2) |
| JUSTIN A. MATTHEWS, | ) 14 VJ.C. § 297(a)(4); 16 VIC § 91(b)(l)(2) |
| | ) 5 Counts 14 V.I.C. § 2253(a); 14 V.1.C. § |
| Defendant. | ) 2256(a); 14 V.LC. § 625(a) |

Cite as 2023 VI Super 41U

### MEMORANDUM OPINION AND ORDER

¶1    **THIS MATTER** is before the Court on:

1.    Defendant's Motion For A Change Of Venue, filed July 14, 2022; and

2.    People's Response To Defendant's Motion For A Change Of Venue, filed July 20, 2022.

¶2    The Court will deny Defendant's Motion For A Change of Venue as the content, quantity, and timing of the publicity was not so extreme and pervasive as to have polluted the jury pool with prejudice.

### I.    INTRODUCTION

¶3    On September 4, 2021, an adult female was shot and killed in the parking lot of a home improvement store on the island of St. Thomas, United States Virgin Islands. On September 5, 2021, Defendant Justin A. Matthews ("Matthews") was arrested in connection with this crime and charged with First Degree Murder in violation of V.I. Code Ann. tit. 14, §§ 921 922(a)(1); Second Degree Murder in violation of 14 V.I.C. §§ 921, 922(b); First Degree Assault With Intent To Commit Murder in violation of 14 V.I.C. § 295(1)(4); and Third Degree Assault in violation of 14 V.I.C. § 297(a)(4), all with Domestic Violence charge enhancements pursuant to 16 V.I.C. § 91(b)(1)(2); as well as five (5) counts of Possession of an Unlicensed Firearm in violation of 14 V.I.C. § 2253(a); Unauthorized Possession of Firearm Ammunition in violation of 14 V.I.C. § 2256(a); and First Degree Reckless Endangerment in violation of 14 V.I.C. § 625(a).

¶4    Matthews moves this Court to direct a change of venue "pursuant to Title 4 V.I.C. § 78(a)(b) and the Federal Rules of Criminal Procedure 21(a)."[1] Matthews contends that information in "the media (television, radio, newspaper, WhatsApp, and Internet)" about his case has caused

---

[1] Def.'s Mot. 1.

the local community "to become deeply hostile, indignant, and repulsed" by Matthews.[2] Matthews contends that the pre-trial publicity has been "pervasive, intense, and inflammatory."[3] Matthews cites to three (3) local newspaper reports where Virgin Islands Police Department ("VIPD") Commissioner Ray Martinez called on the public to stop distributing images of the victim's body via WhatsApp.[4] Matthews argues that "[c]learly, [Matthews] has suffered the loss of his fair and impartial jury within the St. Thomas/St. John district" on account of this.[5] Matthews asserts that the media coverage and otherwise uncited "rumors and innuendos underlying this case" necessitate the change of venue.[6]

¶5    The People of the Virgin Islands ("People") respond that while most cases that look to determine if venue was proper are appellate cases, the Court, nonetheless, should consider the same factors appellate courts analyze:

> (1) the size and characteristics of the community in which the crime occurred, (2) the extent of the media coverage surrounding the case and whether the stories contained a confession or other blatantly prejudicial information of the type readers or viewers could not reasonable be expected to shut from sight (3) the amount of elapsed time between the alleged conduct and trial, and (4) the jury verdict, and whether it acquitted or found the defendant not guilty of any counts, implying that it was not predisposed to a finding of guilt, no matter the evidence.[7]

¶6    The People argue that there is a small population pool, roughly 50,000 people, just like any other case that is tried in this jurisdiction, so voir dire and jury selection will be important in this case.[8] The People argue that the media coverage was published throughout the whole territory, so moving the case to St. Croix would not negate any coverage, and that the coverage of what occurred is not the problem with this case but just accurate reporting of Matthews' alleged "unthinkable" acts.[9] The People assert that the emotional reaction would be the same whether jurors learn of the alleged acts through media coverage or through trial testimony.[10]

¶7    The People argue that the murder occurred over 9 months ago, and due to the backlog of case created by the Covid-19 pandemic, this matter is unlikely to proceed to trial soon. As a result, the time between the murder and the trial will be extended further and should cure any bias.[11] The People cite to *Browne v. People*,[12] where eighteen (18) months was considered sufficient time from

---

[2] Def.'s Mot. 1.

[3] Def.'s Mot. 2.

[4] Def.'s Mot. 2. The newspapers were: 1) V.I. Consortium; 2) St. Thomas Source; and 3) St. Thomas Free Press.

[5] Def.'s Mot. 2.

[6] Def.'s Mot. 6.

[7] People's Resp. 1 (citing *Skilling v. United States*, 561 U.S. 358, 383 (2010)).

[8] People's Resp. 1-2.

[9] People's Resp. 2.

[10] People's Resp. 2.

[11] People's Resp. 3.

[12] 56 V.I. 207 (V.I. 2012).

the publication of articles to trial to cure any bias resulting from media coverage.[13] Additionally, the People argue it will be a burden to try the case in another venue as there are some thirty-to-forty (30-40) witnesses to be called, the majority of whom live and work in St. Thomas.[14] Lastly, the People state that based upon Matthews' filing it is unclear if Matthews is requesting a change of venue to St. Croix or out of the territory. Either way, it would be unduly burdensome for the People to provide flights and lodging for all the witnesses and attorneys for a trial that could last up to three (3) weeks.

## II.   **LEGAL STANDARD**

¶8     The Virgin Islands Code states in 4 V.I.C. § 78(a)-(b):

> (a) All civil actions shall be initiated in the judicial division where the defendant resides or where the cause of action arose or where the defendant may be served with process. Criminal actions shall be brought in the judicial division in which the alleged criminal offense was committed. Actions of criminal conspiracy may be brought in either division in which any of the alleged overt acts were committed.

> (b) For the convenience of parties and witnesses and in the interest of justice, a judge of the Superior Court may, with the approval of the presiding judge of such court, transfer any action or proceeding pending in one judicial division to the other judicial division for hearing and determination.[15]

¶9     Matthews relies upon the Federal Rules of Criminal Procedure, but makes clear in his Motion this is for persuasive purposes as the Superior Court of the Virgin Islands does not follow the Federal Rules of Criminal Procedure.[16] Rather, on December 1, 2017, the Virgin Islands Supreme Court made effective the Virgin Islands Rules of Criminal Procedure by Promulgation Order 2017-010. Currently, Rules 17.1-22 remain reserved, and there is no local analog in the Virgin Islands Rules of Criminal Procedure for Federal Rule 21(a).

¶10    Virgin Islands Rule 1(c)(1) states: "[t]hese rules govern the procedure in all criminal proceedings—including procedures following arrest, with or without a warrant (including extradition or rendition-related)—in the Superior Court of the Virgin Islands (the 'Superior Court' or 'court') except as otherwise stated in these rules."[17] Rule 1(c)(2)(1) states: "[t]hese rules, and subsequent amendments, govern: (1) proceedings in any action commenced after their effective date."[18] Rule 1(f) governs when a procedure is not addressed by the rules and states: "[w]hen procedure is not prescribed by these Virgin Islands Rules of Criminal Procedure, precedent from

---

[13] *Id.* at 239.

[14] People's Resp. 3.

[15] 4 V.I.C. § 78(a)-(b).

[16] Def.'s Mot. 2.

[17] V.I. R. Crim. P. 1(c)(1).

[18] V.I. R. Crim. P. 1(c)(2)(1).

the Supreme Court of the Virgin Islands, or the Virgin Islands Code, a judge may regulate practice in a criminal proceeding in any manner consistent with law of the Virgin Islands."[19] Federal Rule 21(a) allows for transfer of a case to another district for reasons of prejudice and states: "[u]pon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there."[20]

¶11     The authority to move a case to another venue is not only in the Virgin Islands Code and implicit in the Virgin Islands Rules of Criminal Procedure, but affirmed by the Virgin Islands Supreme Court. Citing the same statute, in *Melendez v. People*,[21] the Virgin Islands Supreme Court stated: "[T]he Virgin Islands Code 'authorizes 'a judge of the Superior Court . . . with the approval of the presiding judge,' to 'transfer any action or proceeding pending in one judicial division to the other judicial division for hearing and determination' if such a change in venue is 'in the interest of justice.'"[22]

¶12     The United States Supreme Court in *Skilling v. United States*[23] stated that "[t]he Sixth Amendment secures to criminal defendants the right to trial by an impartial jury" and that "[t]he Constitution's place-of-trial prescriptions, however, do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial."[24] A presumption of prejudice attaches only to the extreme cases, however.[25] Knowledge of the case or media coverage in and of itself is not sufficient; as the United States Supreme Court reasoned in *Reynolds v. United States*:[26]

> In these days of newspaper enterprise and universal education, every case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits.[27]

¶13     In *Sheppard v. Maxwell*,[28] the United States Supreme Court advised judges that "where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity."[29] "[W]hen evaluating whether the pretrial publicity violated the defendant's right

---

[19] V.I. R. CRIM. P. 1(f).

[20] FED. R. CRIM. P. 21(a).

[21] 56 V.I. 244 (V.I. 2012).

[22] *Id.* at 266 (citing *In re People*, 51 V.I. 374, 391 (V.I. 2009)).

[23] 561 U.S. 358 (2010).

[24] *Id.* at 377-78 (citing *In re Murchison*, 349 U.S. 133, 136 (1955)).

[25] *Id.* at 381 ("A presumption of prejudice, our decisions indicate, attends only the extreme case.").

[26] 98 U.S. 145 (1878).

[27] *Id.* at 155-56.

[28] 384 U.S. 333 (1966).

[29] *Id.* at 363.

to an impartial jury, we are to consider the content, quantity, and timing of the publicity."[30] Additionally, courts may consider the voir dire record to determine the effect publicity has had within the venue.[31]

## III. ANALYSIS

¶14 While Matthews alleges that "the media," including radio, television, internet, and a messaging application, WhatsApp, as well as alleged "rumors," has spread hostility against him throughout the territory, no additional evidence was provided as to this beyond the inclusion of some newsprint articles that also appeared online. The Court is not convinced that the evidence provided shows the required extreme local prejudice that warrants a change in venue.

### A. Newspaper articles of the incident do not pollute the venue

¶15 Matthews attaches four (4) online newspaper articles from four (4) different newspapers, all dated September 6, 2021, as evidence that there is pervasive prejudice in the Territory against him.[32]

#### 1. Content

¶16 First, the content of the articles is not distinctly inciting or otherwise strikingly prejudicial. The articles contain photos, none of which are particularly provocative: the VIRGIN ISLANDS CONSORTIUM'S article features a photo of Matthews' mugshot; the ST. THOMAS SOURCE'S article features a photo of the Home Depot parking lot; THE VIRGIN ISLANDS DAILY NEWS' article contains no photos; and the VIRGIN ISLANDS FREE PRESS' article features Matthews' mugshot, an undated photo of the victim from when she was alive, and a tribute post to the victim from Facebook that merely states "Rest In Peace Keoner Baron" in white lettering against a black background.

¶17 Nor is the written content of the articles phrased in such a way as to lead to improper bias. Despite Matthews' contention that he has been depicted as a "cold-blooded murderer," the newspaper articles' depiction of him is rather anodyne. The articles, while naming Matthews and discussing the timing of his arrest, refer to him as a "suspect." The articles mention Matthews' prior arrest for stalking. The crime Matthews is accused of is referred to in concise language without editorializing: "Home Depot parking lot shooting that left a 20-year-old woman dead;"[33]

---

[30] *Hetzel v. Lamas*, 372 Fed. Appx. 280, 283 (3rd Cir. 2010) (unpublished) (citing *Murphy v. Florida*, 421 U.S. 794, 798-803 (1975); then *Rideau v. Louisiana*, 373 U.S. 723, 724-26 (1963); lastly *Irvin v. Dowd*, 366 U.S. 717, 724-28 (1961)).

[31] *Id.* (citing *Patton v. Dowd*, 467 U.S. 1025, 1033-35 (1984); *Irvin*, 366 U.S. at 726-27; *Flamer v. Delaware*, 68 F.3d 736, 754-55 (3d Cir. 1995)).

[32] The newspapers were: 1) V.I. CONSORTIUM; 2) ST. THOMAS SOURCE; 3) THE VIRGIN ISLANDS DAILY NEWS; and 4) ST. THOMAS FREE PRESS.

[33] Def.'s Ex. B 1.

"the Saturday afternoon shooting death of 20-year-old Keoner Barron;"[34] "a Saturday afternoon slaying at Home Depot;"[35] and "the fatal shooting of a woman in the parking lot of Home Depot."[36]

¶18    Generally, the articles contain information on the timing and substance of police and emergency personnel response to the incident and efforts to save the victim; information and data on other homicides in the territory; information about the victim; and lastly, VIPD Commissioner Martinez's request that the public not share videos of the incident as it may spook potential witnesses and cause unnecessary grief and trauma to the family and loved ones of the deceased. In all, the articles do not stray from the standard newspaper arrest report template and simply provide the community with essential information regarding the incident, government response, and general context. They are neither hyper-focused on Matthews, nor do they contain agitating rhetoric, condemning editorializing, or other content that may contribute to a disproportionate tainting of the jury pool. Thus, this factor warns against changing venue.

## 2.  Quantity

¶19    Second, the quantity of the publicity is minimal. Only four (4) stories, printed in newspapers, all occurring on the same day. Even assuming everyone in the Territory of eligible jury age reads one of those newspapers, and on the day it was printed or otherwise found it online, such sparse coverage is by no means pervasive and is not anymore unusual than the treatment every other defendant generally receives in territorial papers. The territorial papers frequently report on crimes, suspects, arrests, and trial outcomes every day. While the Court does not minimize the depravity of the alleged acts, it is not the only heinous crime committed in the Territory upon which reports have been made. The low quantity of the publicity thus weighs against changing the venue.

## 3.  Timing

¶20    Lastly, the incident and subsequent publication of the newspaper articles occurred in early September 2021. The case is currently scheduled to go to trial nearly two (2) years after this occurred. As cited above, the United States Supreme Court in *Sheppard* noted that a trial judge may continue a case until the threat from too much publicity abates.[37] Thus, a longer passage of time in between the incident and trial may work to cool passions or blur memories among the jury-eligible public. As the People pointed out, in *Browne,* eighteen (18) months was found to be a significant enough passage of time to 'cure' any bad publicity that would necessitate a changing of venue.[38] Thus, the Court finds that the over twenty-three (23) months from Matthews' arrest to trial warns against changing the venue.

---

[34] Def.'s Ex. B 4.
[35] Def.'s Ex. B 5.
[36] Def.'s Ex. B 9.
[37] 384 U.S. at 363 (1966).
[38] 56 V.I. at 239 (V.I. 2012).

### B. Alleged sharing of cell phone footage on WhatsApp/social media does not pollute the venue

¶21    Matthews has not provided direct evidence of community members who are eligible jurors sharing pictures or other cellphone footage of the incident or the deceased. The Court neither has nor seen, these alleged pictures or cellphone footage. Matthews does highlight the request of the VIPD Commissioner, reported in some of the articles, asking the community to stop sharing cellphone footage of the incident. From such a request, it can be inferred that some members of the community did share cellphone footage or images. Some of the articles also refer to photos of the crime circulating on social media in the hours after the shooting. Based on the evidence provided, the Court does not find that the sharing of videos or images on social media or WhatsApp has so polluted the jury pool with bias as to necessitate a change in venue.

### 1. Content

¶22    As the Court has not seen the supposed videos or photos, it cannot definitely state one way or the other whether the content is so bad as to favor a change of venue. Presumably, photos or videos of the crime, the suspect at the crime scene, or of the victim would constitute negative publicity. However, the Court is unable to assess whether the videos or photos are such that they would extremely bias anyone who saw them, such as by featuring real-time audio narration of what is happening, featuring real-time extreme audio and visual emotional reactions to what is happening, featuring real-time audio identification of the suspect, or featuring images of a highly graphic and extremely disturbing nature. The Court thus cannot accurately gauge whether the content favors a change of venue. However, any concerns over whether such photos or videos have biased a juror may be addressed during voir dire.[39]

### 2. Quantity

¶23    Likewise, without evidence, the Court cannot say how widespread the sharing of these photos was on WhatsApp or social media. Apparently, it was widespread enough to warrant a public rebuke from VIPD Commissioner Martinez. However, whether it was a single public post on a local community Facebook page, or a message forwarded among hundreds on WhatsApp, it is not clear. The Court does note that by no means does everyone in the Territory use social media, WhatsApp, or even has a smartphone or reliable internet connection. Accordingly, without

---

[39] General voir dire questioning includes the following, which is more than sufficient to assess whether a juror has seen the alleged photos and videos and whether it will improperly influence their ability to serve: 1) "Is there any one on this panel who has any personal knowledge or any prior knowledge of this case or know anyone involved in this matter in any way?"; 2) "Do you have an opinion regarding the charge against Defendant which would in any way prevent you from acting with impartiality?"; 3) "Would you be able to eliminate and disregard everything you may have seen, heard or read regarding this case and render an impartial verdict based solely upon the evidence presented in this Courtroom?"; 4) "Has anyone heard anything about this case on the radio or in the newspapers or on the internet or social media or as a result of discussing it with someone?"; 5) "Do you have an opinion regarding the charge against the Defendant which would in any way prevent you from acting with impartiality?"; 6) "Would you be able to eliminate and disregard everything you may have seen, heard or read regarding this case and render an impartial verdict based solely upon the evidence presented in this Courtroom?".

evidence, the Court cannot accurately gauge whether the quantity of the photos and/or videos shared on social media and WhatsApp favors a change of venue. As with the content factor above, any concerns that a slew of photos or videos of the incident may have biased a juror may be addressed during voir dire.

### 3. Timing

¶24 The newspaper articles provided indicate that the photos and videos were shared within hours of the incident. Even presuming people shared the photos or videos for some days after, this would still mean that the alleged sharing occurred in early September 2021. Active social media users are bombarded with dozens of news stories both local and national, scores of posts from those they may know and those they may not, and tons of images and videos. The nearly two (2) years that have passed, and the attendant mountain of stories, videos, photss, and posts that have accumulated on social media sites and the Internet since then, caution against changing the venue.

## IV.   CONCLUSION

¶25 On September 4, 2021, an adult female was shot and killed in the parking lot of a home improvement store on the island of St. Thomas, United States Virgin Islands. On September 5, 2021, Matthews was arrested in connection with this shooting and charged with multiple counts, including First Degree Murder. The shooting and arrest were reported in local newspapers, and cellphone footage of the incident and/or the victim was purportedly shared on social media. Matthews moves the Court to change the venue of his trial, as he contends that the publicity surrounding his case has irreparably tainted the jury pool against him.

¶26 The Court will deny Matthews' Motion. The evidence provided were four (4) newspaper articles from almost two (2) years ago, published right after his arrest. The content of these articles was fairly standard, dry journalistic reporting of the crime, arrest, and response. The quantity of the articles was low, just four (4) articles appearing on the same day. The timing of the articles was almost two (2) years ago. Additionally, the articles mention that the VIPD Commissioner admonished community members to not share footage or images of the incident or victim so as to not aggrieve the victim's family and friends or spook any potential witnesses. No direct evidence of these videos was provided, so the Court is unable to properly assess either their content or quantity, but as with the newspaper articles, the timing of the alleged sharing was almost two (2) years ago. Any concerns over potentially biased jurors can be addressed by the voir dire process. In addition, the Court is not persuaded that the potential jury pool for Matthews' trial is so polluted, necessitating a change in venue.

¶27 Accordingly, it is hereby

**ORDERED** that Defendant's Motion For A Change Of Venue, filed July 14, 2022, is **DENIED**; and it is further

**ORDERED** that a copy of this Memorandum Opinion And Order shall be directed to counsel of record.

DATED:  July **21** , 2023

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST**:

**TAMARA CHARLES**
Clerk of the Court

BY: _____
ᒥ𝛼 **LATOYA A. CAMACHO**
Court Clerk Supervisor ___7 /24 /2023



**FILED**
July 24, 2023 02:19 PM
ST-2021-CR-00279
**TAMARA CHARLES**
**CLERK OF THE COURT**

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Thomas/St. John

**People of the Virgin Islands**                    Case Number: **ST-2021-CR-00279**

   **v.**                                           Charges: **14 V.I.C. 922(a)**
                                                    **16 V.I.C 91(b)**
**Justin A. Matthews**                              **14 V.I.C. 2253(a)**
                                                    **14 V.I.C. 922(b)**
                                                    **16 V.I.C 91(b)**
                                                    **14 V.I.C. 2253(a)**
                                                    **14 V.I.C. 295(1)**
                                                    **16 V.I.C 91(b)**
                                                    **14 V.I.C. 2253(a)**
                                                    **14 V.I.C. 297**
                                                    **16 V.I.C 91(b)**
                                                    **14 V.I.C. 2253(a)**
                                                    **14 V.I.C. 2253(a)**
                                                    **14 V.I.C. 2256(a)**
                                                    **14 V.I.C. 625 (a)**

## NOTICE OF ENTRY
## OF
## MEMORANDUM OPINION AND ORDER

**To:** Kimberly M. Riley, Esq., via email    Julie J. Smith Todman, Esq., via email
Anna B. Scott, Esq., via email

> **Please take notice that on July 24, 2023**
> **a(n)** _____ **Memorandum Opinion and Order** _____
> **dated** _____ **July 21, 2023** _____ **was/were entered**
> **by the Clerk in the above-titled matter.**

**Dated:** July 24, 2023 _____                    Tamara Charles
                                                    **Clerk of the Court**

                                        By: _____
                                                    Danica A. Miller
                                                    **Court Clerk II**